**COMP**
ROBERT J. CALDWELL, ESQ.
Nevada Bar No. 007637
ERIC D. WALTHER, ESQ.
Nevada Bar No. 013611
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail:   rcaldwell@klnevada.com
          ewalther@klnevada.com

*Attorneys for Plaintiff,*
ARBONNE INTERNATIONAL, LLC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ARBONNE INTERNATIONAL, LLC, | CASE NO. 2:16-cv-1728 |
| vs. | **COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND OTHER RELIEF** |
| NAYAT SEMERCIYAN; and NU-VO JEWELS INC. a/k/a NU-VO BIJOUX INC., | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Arbonne International, LLC, a Delaware limited liability company ("Plaintiff" or "Arbonne"), by and through its counsel, Robert J. Caldwell and Eric D. Walther of Kolesar & Leatham, hereby complains and alleges as follows:

**SUMMARY OF ACTION**

1. This action arises out of the repeated and willful counterfeiting and infringement of Arbonne's intellectual property by Nayat Semerciyan ("Semerciyan") and Nu-Vo Jewels Inc. ("Nu-Vo") a/k/a Nu-Vo Bijoux Inc. (collectively "Defendants").

2. Ms. Semerciyan is a former Arbonne Independent Consultant. For more than a year, Ms. Semerciyan and Nu-Vo have counterfeited and infringed Arbonne's intellectual

property by creating and selling jewelry, pens and other products bearing Arbonne's trademarks and copyrighted artwork. After being provided with several warnings and cease and desist letters, Defendants have persisted in continuing these infringement activities, necessitating this lawsuit.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Arbonne International, LLC, is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business located in Irvine, California.

4. On information and belief, Defendant, Nayat Semerciyan, resides at 1067 Rue Emerson, Laval, Quebec H7W1H6 Canada, and is the President of Nu-Vo.

5. On information and belief, Defendant, Nu-Vo Jewels Inc. (a/k/a Nu-Vo Bijoux Inc.), is a corporation organized under the laws of Quebec, Canada, with its principal place of business at 2015 Rue Drummond, Suite 101, Montreal, Quebec H3G1W7 Canada.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367. Arbonne's claims arise under federal law and, to the extent they arise under state law, this Court has supplemental jurisdiction.

7. This Court has personal jurisdiction over Ms. Semerciyan and Nu-Vo because Ms. Semerciyan, Nu-Vo's President, recently traveled to Las Vegas, Nevada in April 2016 and distributed and sold counterfeit and infringing items manufactured and/or procured by Nu-Vo at Arbonne's Global Training Conference at the MGM Grand Hotel and Casino.

8. Furthermore, this Court has personal jurisdiction over Defendants because, on information and belief, Defendants have sold and shipped infringing products to buyers in Nevada.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events and injury occurred in Clark County, Nevada, and, in the alternative, under 28 U.S.C. § 1391(b)(3), as defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### Arbonne and its Intellectual Property

10. Arbonne distributes personal care, skincare, and nutrition products that are sold exclusively through Arbonne Independent Consultants. In addition to these products, Arbonne also sells or offers other promotional items, such as Arbonne-branded jewelry and pens.

11. Arbonne devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.

12. To protect its valuable brand, Arbonne has registered numerous trademarks with the United States Patent and Trademark Office with respect to its brand and products, including, but not limited to, ARBONNE® (U.S. Trademark Registration Nos. 4,491,258, 3,218,119, 3,159,918, and 1,770,981), ARBONNE INTERNATIONAL® (U.S. Trademark Registration No. 3,159,813), ARBONNE INTELLIGENCE® (U.S. Trademark Registration Nos. 4,629,529 and 3,514,987), ARBONNE ESSENTIALS® (U.S. Trademark Registration Nos. 4,136,385, 4,143,617, 4,143,616, 4,147,378, 4,147,377, and 4,136,347), RE9® (U.S. Trademark Registration Nos. 2,982,066 and 3,679,754), and RE9 ADVANCED® (U.S. Trademark Registration Nos. 3,887,045 and 3,887,044) (collectively the "Arbonne Registered Trademarks" or "Trademarks").

13. Especially relevant to this lawsuit, Arbonne has secured a trademark in its "AA Logo" (U.S. Trademark Registration Nos. 3,895,265, 1,280,041, 3,452,663), which is reproduced below:



14. Arbonne has also registered numerous copyrights with the U.S. Copyright Office with respect to its brands and products—including jewelry—that feature the "AA Logo" including, but not limited to, Copyright Numbers VA0001848274, V3631D172, VA0001848271, VA0001848277, V3631D172, VA0001848268, VA0001848275, VA0001848264, VA0001848266, VA0001952727, and VA0001951229 (collectively the "Arbonne Registered Copyrights" or "Copyrights").

///

15. The registration for each of the Arbonne Registered Trademarks and Copyrights is valid, subsisting and in full force and effect.

16. Pursuant to 15 U.S.C. § 1065, the Arbonne Registered Trademarks serve as conclusive evidence of Arbonne's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of Arbonne's products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

17. And pursuant to 17 U.S.C. § 410(c), the Arbonne Registered Copyrights serve as prima facie evidence of Arbonne's ownership of the copyrights and of its exclusive rights to use the copyrights in commerce and in connection with the sale and distribution of Arbonne's products identified in the registrations.

18. Arbonne actively uses and markets all of the Arbonne Registered Trademarks and Copyrights in commerce.

19. Due to the quality and exclusive distribution of Arbonne's products, and because Arbonne is recognized as the source of high quality products, the Arbonne Registered Trademarks have enormous value to Arbonne.

### Ms. Semerciyan's and Nu-Vo's Infringement

20. On or about November 10, 2013, Ms. Semerciyan became an Arbonne Independent Consultant. At that time, Ms. Semerciyan agreed to the Arbonne Independent Consultant Agreement and Arbonne's Policies & Procedures that, among other things, informed her of Arbonne's intellectual property rights in its trademarks and logos.

21. On April 2, 2015 Arbonne sent Ms. Semerciyan a letter informing her that her Arbonne business had been placed on suspension due to violating numerous of Arbonne's Policies & Procedures by, among other things, selling Arbonne products on Facebook, creating a Facebook page with the Arbonne brand name in the title, and creating and selling counterfeit Arbonne-branded jewelry that infringes on the Arbonne Registered Trademarks and Copyrights. Arbonne requested that Ms. Semerciyan inform Arbonne that she had ceased engaging in these activities by April 7, 2015.

///

22.     On April 6, 2015, Ms. Semerciyan informed Arbonne that she had taken the requested actions and would no longer violate Arbonne's Policies & Procedures.

23.     On April 7, 2015, however, Arbonne determined that Ms. Semerciyan remained in violation of Arbonne's Policies & Procedures and terminated her as an Arbonne Independent Consultant.

24.     Ms. Semerciyan utilizes Nu-Vo to manufacture and/or to acquire the counterfeit and infringing Arbonne-branded jewelry and other products bearing the Arbonne Registered Trademarks and Copyrights.

25.     As Ms. Semerciyan is President and a principal of Nu-Vo, her knowledge is imputed to Nu-Vo.

26.     At this time, it is unknown whether Ms. Semerciyan is acting on behalf of Nu-Vo or herself individually, or both, so Arbonne pleads each of these scenarios in the alternative.

27.     After the termination, Arbonne discovered that Ms. Semerciyan and Nu-Vo have continued to create and offer for sale counterfeit and infringing Arbonne-branded jewelry, pens, clothing and other items.

28.     The counterfeit and infringing jewelry infringes Arbonne's Registered Trademarks and Copyrights by featuring the AA Logo. By way of example, Ms. Semerciyan and Nu-Vo have created and sold the following jewelry featuring Arbonne's AA Logo:




29. The counterfeit pens similarly infringe Arbonne's Registered Trademarks and Copyrights by featuring Arbonne's AA Logo and the Arbonne name. By way of example, Ms. Semerciyan has created and sold the following pens featuring Arbonne's brand name and AA Logo:



30. Ms. Semerciyan and Nu-Vo sell these counterfeit and infringing products online, including at least on www.facebook.com, Ms. Semerciyan's personal Facebook page, and through the Facebook Page "Promo Jewels etc...."

31. The images and copies of images featuring Arbonne's name and AA Logo that Defendants have uploaded online, including to various Facebook pages, also infringe Arbonne's Registered Trademarks and Copyrights.

32. In offering the counterfeit and infringing goods online, Defendants attempt to sell and, on information and belief, do sell and ship their goods to customers who are located in the United States, including into Nevada and this district.

33. In selling the counterfeit and infringing goods online, Defendants hold themselves out as having Arbonne's permission to sell and distribute goods.

34. Ms. Semerciyan continues to hold herself out as an authorized Arbonne Independent Consultant, and Defendants specifically target the sale of the counterfeit and infringing goods to Arbonne Independent Consultants.

35. On November 17, 2015, Arbonne's Canadian counsel sent a cease and desist letter to Ms. Semerciyan, demanding that Ms. Semerciyan immediately: (1) abide by the obligations of the Arbonne Independent Consultant Agreement; (2) cease holding herself out as an Arbonne Independent Consultant; and (3) cease all counterfeiting activities utilizing Arbonne's brand name and AA Logo.

36. Ms. Semerciyan has not responded to the November 17, 2015 letter, but rather has continued to infringe Arbonne's Registered Trademarks and Copyrights.

37. On March 7, 2016, Arbonne's U.S. counsel sent another cease and desist letter to Ms. Semerciyan, which was delivered on March 8, 2016.

38. Defendants have not responded to the letter and have continued to infringe Arbonne's Registered Trademarks and Copyrights.

39. More recently, on information and belief, Defendants sold and distributed the counterfeit and infringing goods at Arbonne's Global Training Conference in Las Vegas, Nevada.

40. As Ms. Semerciyan explained in an April 2016 post on Facebook, she traveled to Las Vegas and distributed counterfeit Arbonne-branded products to Arbonne Independent Consultants at the MGM Grand Hotel and Casino:

 **Nayat Semerciyan**
Yesterday at 8:41am

We are overwhelmed with all the orders. Thanks to all of you ♡ We are shipping everything today until Friday However some items hasn't been completed due to high order volume. Everything will be ready before my departure Wednesday morning & I'll be bringing your orders, drop them at the bellboy desk at the MGM main entrance on right side under your names. If u have any questions pm me. Thanks for your understanding. For those of you that forgot to order couple of pieces let me know. I might be able to help you ☺

Everything will in organza bags or boxes not to worry about packaging it's well presentable.

2170457 (9792-1)

41. Since distributing products in Las Vegas, Defendants have continued to produce, market and sell counterfeited Arbonne products to customers in the United States.

42. For example, in May 2016, Ms. Semerciyan explained that she would be designing and producing new products for the upcoming General Training Conference to be held by Arbonne in Niagara Falls, Canada on September 22-24, 2016:



### Arbonne Has Suffered Significant Harm

43. By their unauthorized use of the Arbonne Registered Trademarks and Copyrights, Ms. Semerciyan and Nu-Vo have been misleading consumers into believing they were purchasing genuine Arbonne merchandise or that Arbonne authorized Defendants' manufacture and sale of products bearing the Arbonne Registered Trademarks and Copyrights.

44. Arbonne has suffered, and will continue to suffer, irreparable harm to the Arbonne Registered Trademarks and Copyrights and its goodwill based on Defendants' actions.

45. Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law as evidenced by their repeated decisions to ignore Arbonne's cease and desist letters.

///

///

46. Arbonne is entitled to injunctive relief because Defendants will continue to unlawfully counterfeit and sell products that infringe on Arbonne's Registered Trademarks and Copyrights. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to Arbonne's goodwill; and has caused and will continue to cause Arbonne to lose business.

## FIRST CAUSE OF ACTION

### Trademark Counterfeiting – 15 U.S.C. § 1114

47. Arbonne re-alleges the allegations set forth in paragraphs 1-46 above.

48. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Arbonne Registered Trademarks on goods covered by Arbonne's federal trademark registrations.

49. Defendants have intentionally used these spurious designations, knowing that they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods, including at the Arbonne at the 2016 Arbonne Global Training Conference in Las Vegas, Nevada.

50. Defendants' use of the Arbonne Registered Trademarks to advertise, promote, offer for sale, distribute, and sell jewelry, pens, clothing and other items ("Infringing Products") bearing counterfeit trademarks was at all times and is currently without Arbonne's authorization, license, or consent.

51. Defendants' unauthorized use of the Arbonne Registered Trademarks on and in connection with their advertisement, promotion, sale, offering for sale, and distribution of the Infringing Products on the Internet and at Arbonne conferences constitutes use of the Arbonne Registered Trademarks in commerce.

52. Defendants' unauthorized use of Arbonne Registered Trademarks is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendants' Goods are the same as authorized Arbonne goods and/or that the Infringing Products are affiliated with, connected to, associated with, or in some way related to Arbonne; (c) result in Defendants

///

benefiting from Arbonne's advertising and promotion; and (d) result in Defendants unfairly profiting from Arbonne's reputation and trademarks all to the substantial and irreparable injury of the public, Arbonne, the Arbonne Registered Trademarks, and the substantial goodwill they represent.

53. Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54. By reason for the foregoing, Defendants are liable to Arbonne for: (a) statutory damages in the of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Arbonne's election, an amount representing three (3) times Arbonne's damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment internet pursuant to 15 U.S.C. § 1117(b).

55. Arbonne is also entitled to temporary, preliminary, and permanent injunctive relief, including an order permitting the seizure of all "goods and counterfeit marks . . . the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violations" pursuant to 15 U.S.C. § 1116(d).

## SECOND CAUSE OF ACTION

### Trademark Infringement - 15 U.S.C. §§ 1114

56. Arbonne re-alleges the allegations set forth in paragraphs 1-55 above.

57. The Arbonne Registered Trademarks are valid and subsisting trademarks in full force and effect.

58. Without Arbonne's authorization, license, or consent, Defendants knowingly used and continues to use in commerce the Arbonne Registered Trademarks in connection with the Infringing Products Defendants manufacture, advertise, promote, import into, and sell in the United States. Defendants have used the Arbonne Registered Trademarks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to, and/or trade off Arbonne's fame and the Arbonne Registered Trademarks.

59. Defendants' use of the Arbonne Registered Trademarks is likely to: (a) confuse, mislead, or deceive customers, purchasers, and members of the general public because buyers

believe they are purchasing genuine Arbonne products that originate from, are sponsored by, authorized by, or otherwise connected with, Arbonne; and (b) cause such people to believe in error that Defendants products have been authorized, sponsored, approved, endorsed, or licensed by Arbonne or that Defendants and their products are in some way affiliated with Arbonne.

60. Arbonne has no control over the nature or quality of the goods and/or services Defendants offer. Therefore, Arbonne's reputation and goodwill has been and continues to be damaged—and the value of the Arbonne Registered Trademarks jeopardized—by Defendants' continued use of the Arbonne Registered Trademarks and colorable imitations of them. Because of the likelihood of confusion between Defendants' designs and the Arbonne Registered Trademarks, any defects, objections, or faults found with Defendants' products will negatively reflect upon and injure the exceptional reputation that Arbonne has established for the products and services it offers in connection with the Arbonne Registered Trademarks. As such, Defendants are liable to Arbonne for infringement of the Arbonne Registered Trademarks, under 15 U.S.C. § 1114.

61. Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Arbonne's Trademarks, business, reputation, and good will. Arbonne has no adequate remedy at all as monetary damages are inadequate to compensate Arbonne for the injuries caused by Defendants to its trademarks, business, reputation and goodwill.

62. As a direct and proximate result of Defendants' actions, Arbonne has suffered and will continue to suffer great damage to its valuable Arbonne Registered Trademarks, and other damages to be proven at trial.

63. Defendants' infringement is deliberate, willful, and fraudulent and without any extenuating circumstances, and constitutes knowing use of the Arbonne Registered Trademarks, and an exceptional case within the meaning of 15 U.S.C. § 1117(b).

64. Arbonne is entitled to temporary, preliminary, and permanent injunctive relief, as well as an award of Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## THIRD CAUSE OF ACTION

**False Designation of Origin/Unfair Competition - 15 U.S.C. § 1125**

65. Arbonne re-alleges the allegations set forth in paragraphs 1-64 above.

66. The Arbonne Registered Trademarks are valid and subsisting trademarks in full force and effect.

67. Defendants' use, promotion, offers to sell, sale, and/or importation of Infringing Products violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Arbonne Registered Trademarks are federally registered, and are entitled to protection under both federal and common law. The Arbonne Registered Trademarks have distinctive appearances with unique and non-functional designs. Arbonne has extensively and continuous promoted and used the Arbonne Registered Trademarks for many years in the United States and Canada. Through that extensive and continuous use, the Arbonne Registered Trademarks have become well-known indicators of the original and quality of Arbonne's products and have acquired substantial secondary meaning in the marketplace.

68. Defendants' use of colorable imitations of the Arbonne Registered Trademarks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Arbonne.

69. Defendants' use of colorable imitations of the Arbonne Registered Trademarks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Arbonne for which Arbonne has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Arbonne Registered Trademarks.

70. Defendants' use of colorable imitations of the Arbonne Registered Trademarks has been intentional and willful. Defendants' bad faith is evidenced by, at least, their use of the marks identical to the Arbonne Registered Trademarks on the Infringing Products as well as by their repeated refusal to acknowledge or abide by Arbonne's infringement notices. Arbonne is

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL: (702) 362-7800 / FAX: (702) 362-9472

entitled to injunctive relief, and Arbonne is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125, 1116, and 1117.

## FOURTH CAUSE OF ACTION

### Trademark Dilution 15 U.S.C. § 1125(c)

71. Arbonne re-alleges the allegations set forth in paragraphs 1-70 above.

72. The Arbonne Registered Trademarks are valid and subsisting trademarks in full force and effect.

73. Arbonne is the owner of the Arbonne Registered Trademarks, which are distinctive and widely recognized by the general consuming public. Arbonne products are sold and purchased through its Independent Consultants throughout the United States, including Nevada.

74. Arbonne is widely recognized as the designated source of goods bearing the Arbonne Registered Trademarks.

75. Defendants' willful use of the Arbonne Registered Trademarks in connection with the unauthorized manufacture and illegal sale of inferior products diluted the Arbonne Registered Trademarks because the products manufactured and sold by Defendants were not, in fact, genuine and authentic Arbonne products.

76. As a result of Defendants' unlawful actions, the reputation and goodwill associated with the Arbonne Registered Trademarks was harmed and Arbonne suffered immediate and irreparable injury.

77. Further, Arbonne has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

78. Pursuant to 15 U.S.C. § 1117(a), Arbonne is entitled to an award of attorneys' fees.

## FIFTH CAUSE OF ACTION

### Common Law Trademark Infringement and Unfair Competition

79. Arbonne re-alleges the allegations set forth in paragraphs 1-78 above.

80. Arbonne was the first to use the Arbonne Registered Trademarks. As a result of Arbonne's continuous promotion and sales of products bearing the Arbonne Registered Trademarks, Arbonne Registered Trademarks have become widely known and Arbonne has been identified in the public mind as the source of the products to which the Arbonne Registered Trademarks are applied.

81. As a result of the experience, care, and service of Arbonne in producing the products to which the Arbonne Registered Trademarks are applied, these products have become widely known and have acquired a reputation for quality, styling, and utility. Moreover, the Arbonne Registered Trademarks have come to symbolize Arbonne's reputation for quality and excellence. The Arbonne Registered Trademarks have also acquired secondary meaning in the marketplace, and are nonfunctional.

82. Defendants, with knowledge of and intentional disregard of Arbonne's rights, continue to advertise, promote, and sell products using the Arbonne Registered Trademarks, or colorable and confusing imitations of them. Defendants' acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of Arbonne's products and services.

83. Defendants' acts alleged herein and specifically, without limitations, their use, manufacture, promotion, offers to sell, and/or importing into the United States numerous products that are confusingly similar to products bearing the Arbonne Registered Trademarks, infringe Arbonne's exclusive trademark rights in violation of the common law.

84. Defendants' acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Arbonne's trademarks, business, reputation, and goodwill. Arbonne has no adequate remedy at law because monetary damages are inadequate to compensate Arbonne for the injuries caused by Defendants to its trademarks, business, reputation, and goodwill.

85. Defendants' use of colorable imitations of the Arbonne Registered Trademarks has been intentional and willful. Defendants' bad faith is evidenced by, at least, their use of the marks identical to the Arbonne Registered Trademarks on the Infringing Products as well as by

their repeated refusal to acknowledge or abide by Arbonne's infringement notices. Arbonne is entitled to injunctive relief, and Arbonne is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Copyright Infringement 17 U.S.C. § 501

86. Arbonne re-alleges the allegations set forth in paragraphs 1-85 above.

87. The Arbonne Registered Copyrights are valid and subsisting copyrights in full force and effect.

88. Defendants willfully, knowingly and deliberately infringed on the Arbonne Registered Copyrights through the unauthorized production and sale of products bearing the Arbonne Registered Copyrights, and the display of products bearing the Arbonne Registered Copyrights online, including on www.facebook.com, without the consent of Arbonne and in violation of Arbonne's exclusive rights under 17 U.S.C. § 106.

89. As a proximate result of Defendants' actions, Arbonne has suffered and will continue to suffer great damage to its business, good will, reputation, and profits in an amount to be proven at trial.

90. Arbonne has no adequate remedy at law for Defendants' infringement. Unless Defendants are permanently enjoined, Arbonne will continue suffer irreparable harm.

91. Pursuant to 17 U.S.C. § 505, Arbonne is entitled to an award of attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Arbonne prays for:

A. Judgment that Defendants have: (i) willfully engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) willfully infringed the Arbonne Registered Trademarks in violation of 15 U.S.C. § 1114; (iii) willfully used false designations of original/unfair competition in violation of 15 U.S.C. § 1125(a); (iv) willfully violated Arbonne's common law rights in the ARBONNE Marks; and (v) willfully infringed the Arbonne Registered Copyrights in violation of 17 U.S.C. § 501.

//

1    B.    Judgment in favor of Arbonne and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

C.    Temporary, preliminary and permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition directed against the Arbonne Registered Trademarks and Copyrights, by Defendants, their, employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with any of them (the "Enjoined Parties");

D.    An order, pursuant to 15 U.S.C. § 1116(d) and the Court's inherent authority, directing seizure of all evidence of Defendants' unlawful conduct;

E.    An order requiring Defendants to remove all Arbonne Registered Trademarks and Copyrights from their Facebook account and any other website under their control;

F.    An order freezing all financial accounts relating to any use or infringement of the Arbonne Registered Trademarks and Copyrights, including, without limitations, any PayPal accounts;

G.    A finding that this is an exceptional case within the meaning of 15 U.S.C. § 1117(a);

H.    An award of damages adequate to compensate Arbonne for the trademark infringements that have occurred pursuant to 15 U.S.C. § 1117(a), which amount shall include Defendants' profits, Arbonne's damages, and the costs of this action.

I.    At Arbonne's election, either: (1) an award of damages adequate to compensate Arbonne for the intentional acts of trademark counterfeiting that have occurred, under 15 U.S.C. § 1117(b), which amount shall include three times Defendants' profits or Arbonne's damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court

finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just.

J. Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff Arbonne demands trial by jury of all issues so triable.

DATED this 22nd day of July, 2016.

KOLESAR & LEATHAM

By /s/ Robert J. Caldwell
ROBERT J. CALDWELL, ESQ.
Nevada Bar No. 007637
ERIC D. WALTHER, ESQ.
Nevada Bar No. 13611
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada 89145

*Attorneys for Plaintiff,*
*ARBONNE INTERNATIONAL, LLC*